1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BitTitan, Inc., a Washington corporation,

              Plaintiff,

    v.

SkyKick, Inc., a Delaware corporation,

              Defendant.

CASE NO. C15-0754 RSM

ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTION

## I.  INTRODUCTION

THIS MATTER comes before the Court on Plaintiff's Motion for Preliminary Injunction. Dkt. #5.  Having considered the briefs presented by the parties, along with the Declarations in support thereof and Exhibits thereto, and the arguments presented by the parties on August 26, 2015, and for the reasons discussed herein, the Court finds that Plaintiff has failed to meet its burden at this stage of the proceedings and DENIES its motion.

## II.  BACKGROUND

In this action, Plaintiff BitTitan alleges infringement of United States Patent No. 8,938,510 (the '510 patent), which issued January 20, 2015, and is titled "On-Demand Mailbox Synchronization and Migration System."  Dkt. #1 at ¶ ¶ 4 and 8.  According to BitTitan, the patent "claims and discloses unique and novel methods and systems for managing physical and logical resources to provide on-demand synchronization or migration of mailboxes and their

ORDER – 1

corresponding content." *Id.* at ¶ 10.  BitTitan asserts that it invented, patented, and now sells a unique system that allows companies to seamlessly migrate their employees' email data from one email system to another.  BitTitan further asserts that its invention is unique in the field because it dynamically associates computing resources to copy, transform, and transpose the underlying email mailbox data.

BitTitan alleges that Defendant SkyKick is its main competitor.  BitTitan further alleges that SkyKick has adopted the patented and essential elements of BitTitan's migration product and offers them in all of its (SkyKick's) products.  As a result, BitTitan asserts that SkyKick's infringement is eroding BitTitan's MigrationWiz sales prices, denying BitTitan the opportunity to differentiate itself from SkyKick, and irreparably distorting the young and rapidly growing marketplace for email migration through the cloud.

BitTitan now seeks a preliminary injunction that enjoins SkyKick from making, using, offering for sale, or selling its Data-Only Migration Application, SMB Suite, and Enterprise Suite products, or any other data migration product that it alleges infringes Claims 1, 2, and 7 of the '510 Patent.

## III.     DISCUSSION

### A.  Preliminary Injunctions

In determining whether to grant a preliminary injunction, this Court considers: (1) the likelihood of the moving party's success on the merits; (2) the possibility of irreparable injury to that party if an injunction is not issued; (3) the extent to which the balance of hardships favors the moving party; and (4) whether the public interest will be advanced by the injunction.  *See Miller v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 456 (9th Cir. 1994); *Los Angeles Mem'l Coliseum Comm'n v.*

ORDER – 2

*Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980).   The Ninth Circuit has often compressed this analysis into a single continuum where the required showing of merit varies inversely with the showing of irreparable harm.   *See Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir. 2000).   Thus, BitTitan will be entitled to preliminary relief if it is able to show either: (1) probable success on the merits and the possibility of irreparable harm; or (2) the existence of serious questions going to the merits and a fair chance of success thereon, with the balance of hardships tipping sharply in favor of an injunction.   *Miller*, 19 F.3d at 456.

Granting injunctive relief is "an act of equitable discretion" on the part of the District Court.   *eBay, Inc. v. MercExchange, LLC,* 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006).   As such, no one factor is necessarily dispositive, but "the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify [denying the motion]."   *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.,* 908 F.2d 951, 953 (Fed. Cir. 1990); *Jack Guttman, Inc. v. Kopykake Enters., Inc.,* 302 F.3d 1352, 1363 (Fed. Cir. 2002).

    *1.   Likelihood of Success on the Merits*

In its Complaint, BitTitan alleges one count for patent infringement against SkyKick. Dkt. #1 at ¶ ¶ 20-22   As noted above, BitTitan specifically alleges that SkyKick has infringed Claims 1, 2, and 7 of the '510 Patent.

Claim 1 is an independent claim, reading:

    **1.**   A method comprising:

    obtaining credentials for accessing a plurality of mailbox accounts on a

source messaging system, wherein the credentials include administrative
credentials, automatically requested user credentials, or a combination
thereof;

dynamically associating computing resources including on-demand
instances obtained from one or more cloud service providers for
processing copying of information associated with the plurality of
mailbox accounts; and

employing the obtained credentials and the associated computing resources
to copy at least some mailbox content associated with each mailbox
account from the source messaging system to the destination messaging
system, wherein the computing resources are dynamically associated to
tasks employed in the copying,

wherein associating computing resources further comprises prioritizing the
computing resources to process the copying of the plurality of identified
mailbox accounts based on at least one of cost, geographic location,
bandwidth, availability, security, type, or speed.

Dkt. #1, Ex. A at Col. 12, lns 32-52 (bold in original).

Claims 2 and 7 depend from Claim 1, and read:

**2.** The method of claim **1**, further comprising configuring the
source messaging system and the destination messaging system for the
copying, wherein configuring further comprises determining at least one of a
location, messaging system type, and number of mailbox accounts for
copying.

. . .

**7.** The method of claim **1**, further comprising synchronizing
content for the plurality of mailbox accounts that having information copied
from the source messaging system to the destination messaging system,
wherein the synchronization is based on at least one of a period of time or an
event.

Dkt. #1, Ex. A at Col. 12, lns. 53-57 and Col. 13, lns. 9-14.

To establish a likelihood of success on the merits of a patent-infringement claim, BitTitan

must demonstrate that it can "more likely than not" establish the presence of infringement.

ORDER – 4

*Trebro Mfg. v. FireFly Equip., LLC,* 748 F.3d 1159, 1166 (Fed. Cir. 2014); *see Revision Military, Inc. v. Balboa Mfg. Co.,* 700 F.3d 524, 525-26 (Fed. Cir. 2012).  If SkyKick raises "a substantial question concerning infringement or invalidity [of the patent], meaning that it asserts a defense that [plaintiff] cannot prove lacks substantial merit," then BitTitan is not likely to succeed on the merits of its patent infringement claim, and a preliminary injunction should not issue.  *Oakley Inc. v. Sunglass Hut Int'l,* 316 F.3d 1331, 1339-40 (Fed. Cir. 2003); *See Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013).  On this motion, BitTitan argues that it is likely to succeed on the merits because its patent is presumptively valid and because SkyKick's products perform every step of at least the above three claims of the '510 patent.  The Court disagrees for a number of reasons.

    a.  <u>Validity</u>

"[W]hile the burden of proving invalidity is with the party attacking validity, the party seeking the injunction retains the burden of showing a reasonable likelihood that the attack on the patent's validity would fail."  *Oakley,* 316 F.3d at 1339 (quotation omitted); *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH,* 237 F.3d 1359, 1365 (Fed. Cir. 2001).  However, because an issued patent is presumed valid, both as a whole and on a claim-by-claim basis, *see* 35 U.S.C. § 282(a), the movant need only point to the fact the patent was issued to shift the burden to the non-movant to "identify any persuasive evidence of invalidity."  *Purdue Pharma,* 237 F.3d at 1365.  Because "[v]ulnerability is the issue at the preliminary injunction stage," a showing of a substantial question of invalidity "requires less proof than the clear and convincing showing necessary to establish invalidity itself."  *Amazon, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d

1343, 1359 (Fed. Cir. 2001).  Neither party contests that the USPTO issued the '510 Patent, so the burden shifts and rests with SkyKick to identify persuasive evidence of its invalidity.

SkyKick raises two arguments with respect to invalidity.  First, SkyKick argues that the '510 patent is invalid because it is obvious under 35 U.S.C. § 103.  Second, SkyKick also argues that the '501 Patent is invalid because it covers patent-ineligible subject matter.  Dkt. #19 at 14-19.  In order to evaluate both validity arguments, the Court must engage in an examination of the patent Claims.  Such analysis makes apparent the difficulty presented by the "preliminary" nature of Plaintiff's motion.  At this point in time, the Court has not construed the claims or claim terms, and the exact meaning of the various words and phrases which define Plaintiff's patent has yet to be determined.  Thus, the Court cautiously approaches Defendant's invalidity arguments.

The Court first examines Defendant's arguments under 35 U.S.C. § 101.  The United States Supreme Court has recently examined patent-ineligible subject matter in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, __ U.S. __ 134 S. Ct. 2347,  ___ L. Ed.2d ___ (2014):

> Section 101 of the Patent Act defines the subject matter eligible for patent protection. It provides:
>
> > "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.
>
> "We have long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Association for Molecular Pathology* v. *Myriad Genetics, Inc.*, 569 U.S. ___, ___, 133 S. Ct. 2107, 186 L. Ed. 2d 124, 133 (2013) (internal quotation marks and brackets omitted).  We have interpreted § 101 and its predecessors in light of this exception for more than 150 years. *Bilski*, *supra*, at 601-602, 130 S. Ct. 3218, 177 L. Ed. 2d 792; *see also O'Reilly* v. *Morse*, 56 U.S. 62, 15 How. 62, 112-120, 14 L. Ed. 601 (1854); *Le Roy* v. *Tatham*, 55 U.S. 156, 14 How. 156, 174-175, 14 L. Ed. 367 (1853).

ORDER – 6

We have described the concern that drives this exclusionary principle as one of pre-emption. *See, e.g., Bilski, supra*, at 611-612, 130 S. Ct. 3218, 177 L. Ed. 2d 792 (upholding the patent "would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea"). Laws of nature, natural phenomena, and abstract ideas are "' "the basic tools of scientific and technological work." '" *Myriad, supra*, at ___, 133 S. Ct. 2107, 186 L. Ed. 2d 124, 133). "[M]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it," thereby thwarting the primary object of the patent laws. *Mayo, supra*, at ___, 132 S. Ct. 1289, 182 L. Ed. 2d 321, 327); see U.S. Const., Art. I, § 8, cl. 8 (Congress "shall have Power . . . To promote the Progress of Science and useful Arts"). We have "repeatedly emphasized this . . . concern that patent law not inhibit further discovery by improperly tying up the future use of" these building blocks of human ingenuity. *Mayo, supra*, at ___, 132 S. Ct. 1289, 182 L. Ed. 2d 321, 335) (citing *Morse, supra*, at 113, 56 U.S. 62, 14 L. Ed. 601 ).

At the same time, we tread carefully in construing this exclusionary principle lest it swallow all of patent law. *Mayo*, 566 U.S., at ___, 132 S. Ct. 1289, 182 L. Ed. 2d 321, 327). At some level, "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* at ___, 132 S. Ct. 1289, 182 L. Ed. 2d 321, 327). Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept. *See Diamond* v. *Diehr*, 450 U.S. 175, 187, 101 S. Ct. 1048, 67 L. Ed. 2d 155 (1981). "[A]pplication[s]" of such concepts "'to a new and useful end,'" we have said, remain eligible for patent protection. *Gottschalk* v. *Benson*, 409 U.S. 63, 67, 93 S. Ct. 253, 34 L. Ed. 2d 273 (1972).

Accordingly, in applying the §101 exception, we must distinguish between patents that claim the "'buildin[g] block[s]'" of human ingenuity and those that integrate the building blocks into something more, *Mayo*, 566 U.S., at ___, 132 S. Ct. 1289, 182 L. Ed. 2d 321, 336), thereby "transform[ing]" them into a patent-eligible invention, *id.* at ___, 132 S. Ct. 1289, 182 L. Ed. 2d 321, 327). The former "would risk disproportionately tying up the use of the underlying" ideas, *id.* at ___, 132 S. Ct. 1289, 182 L. Ed. 2d 321, 327), and are therefore ineligible for patent protection. The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws.

. . .

In *Mayo Collaborative Services* v. *Prometheus Laboratories, Inc.*, 566 U.S. ___, 132 S. Ct. 1289, 182 L. Ed. 2d 321 (2012), we set forth a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those

concepts.  First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts.  *Id.* at ___, 132 S. Ct. 1289, 182 L. Ed. 2d 321, 337).  If so, we then ask, "[w]hat else is there in the claims before us?"  *Id.* at ___, 132 S. Ct. 1289, 182 L. Ed. 2d 321, 337).  To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application.  *Id.* at ___, 132 S. Ct. 1289, 182 L. Ed. 2d 321, 337.  We have described step two of this analysis as a search for an "'inventive concept'" – *i.e.,* an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."  *Id.*, at ___, 132 S. Ct. 1289, 182 L. Ed. 2d 321, 327).

*Alice*, 134 S. Ct. at 2354-2355.

Accordingly, this Court must first determine whether the claims at issue are directed to a patent-ineligible concept.  SkyKick argues that BitTitan's asserted claims are directed to the abstract concept of prioritizing resources to move data.  Dkt. #19 at 14-15.  BitTitan argues that the patent discloses and claims a specific method for performing mailbox migrations that uses networked processing resources in a unique way – dynamically associating them with mailbox tasks and prioritizing the use of the resources based on a specific set of criteria.  Dkt. #44 at 7.  As a result, BitTitan asserts that the claims are not abstract.

As the Court explained in *Alice*,

The "abstract ideas" category embodies "the longstanding rule that '[a]n idea of itself is not patentable.'"  *Benson, supra*, at 67, 93 S. Ct. 253, 34 L. Ed. 2d 273 (quoting *Rubber-Tip Pencil Co.* v. *Howard*, 87 U.S. 498, 20 Wall. 498, 507, 22 L. Ed. 410 (1874)); see also *Le Roy, supra*, at 175, 55 U.S. 156, 14 L. Ed. 367 ("A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right").  In *Benson*, for example, this Court rejected as ineligible patent claims involving an algorithm for converting binary-coded decimal numerals into pure binary form, holding that the claimed patent was "in practical effect . . . a patent on the algorithm itself."  409 U.S., at 71-72, 93 S. Ct. 253, 34 L. Ed. 2d 273.  And in *Parker* v. *Flook*, 437 U.S. 584, 594-595, 98 S. Ct. 2522, 57 L. Ed. 2d 451 (1978), we held that a mathematical

formula for computing "alarm limits" in a catalytic conversion process was also a patent-ineligible abstract idea.

We most recently addressed the category of abstract ideas in *Bilski* v. *Kappos*, 561 U.S. 593, 130 S. Ct. 3218, 177 L. Ed. 2d 792 (2010). The claims at issue in *Bilski* described a method for hedging against the financial risk of price fluctuations. Claim 1 recited a series of steps for hedging risk, including: (1) initiating a series of financial transactions between providers and consumers of a commodity; (2) identifying market participants that have a counterrisk for the same commodity; and (3) initiating a series of transactions between those market participants and the commodity provider to balance the risk position of the first series of consumer transactions. *Id.* at 599, 130 S. Ct. 3218, 177 L. Ed. 2d 792. Claim 4 "pu[t] the concept articulated in claim 1 into a simple mathematical formula." *Ibid.* The remaining claims were drawn to examples of hedging in commodities and energy markets.

"[A]ll members of the Court agree[d]" that the patent at issue in *Bilski* claimed an "abstract idea." *Id.* at 609, 130 S. Ct. 3218, 177 L. Ed. 2d 792; see also *id.,* at 619, 130 S. Ct. 3218, 177 L. Ed. 2d 792 (Stevens, J., concurring in judgment). Specifically, the claims described "the basic concept of hedging, or protecting against risk." *Id.,* at 611, 130 S. Ct. 3218, 177 L. Ed. 2d 792. The Court explained that "'[h]edging is a fundamental economic practice long prevalent in our system of commerce and taught in any introductory finance class.'" *Ibid.* "The concept of hedging" as recited by the claims in suit was therefore a patent-ineligible "abstract idea, just like the algorithms at issue in *Benson* and *Flook.*" *Ibid.*

*Alice*, 134 S. Ct. at 2355-2356.

SkyKick argues that the concept in Claim 1 is abstract because it essentially seeks to perform the general method of prioritizing resources for the migration of email data in the same manner people have been doing it for years prior to the issuance of the patent without using a cloud-based service provider. SkyKick further argues that the asserted claims are similar to those that have been found in other ineligible cases. Dkt. #19 at 15-17. BitTitan responds that the claim is patentable because it is directed to an idea "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks" and also

because the claims specify "how interactions with the Internet are manipulated to yield a desired result."  Dkt. #44 at 7 (quoting *DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245, 1257-58 (Fed. Cir. 2014).

Without the benefit of claim construction at this time, a review of Claim 1 reveals the following concept: a method for obtaining credentials to access multiple email accounts on a messaging system, dynamically associating computer resources from a cloud service provider to copy information from those accounts, then actually copying the data from those accounts to a new messaging system using the cloud resources, and wherein using the cloud resources allows the prioritization of such resources to make the copying more efficient based on certain criteria. *See* Dkt. #1, Ex. A at Col. 12, lns 32-52.  The Court understands from Plaintiff's oral arguments that the essence of the Claim is a method for prioritizing resources by utilizing specific instructions, which overcomes a problem with email system migrations – namely, using the cloud to prioritize resources.

Yet, Defendant points out that both email migration and the cloud are old concepts, existing well before the instant patent issued, and that the processes identified by Plaintiff add nothing innovative to the Claims.  Indeed, the Court in *Alice* made clear that a claim directed to an abstract idea does not move into section 101 eligibility territory by "merely requir[ing] generic computer implementation."  *Alice*, 134 S. Ct. at 2357.  In so holding, the Court in *Alice* relied on *Mayo* for the proposition that "'[s]imply appending conventional steps, specified at a high level of generality,' was not '*enough*' to supply an '"inventive concept."'"  *Id*. (quoting *Mayo*, 132 S. Ct. at 1300, 1297, 1294).  Neither "attempting to limit the use of [the idea] to a particular

ORDER – 10

technological environment" nor a "wholly generic computer implementation" is sufficient. *Id*. at 2358 (internal quotation marks omitted).

The Court explained that the method claims in *Alice* invoke "the use of a computer to create electronic records, track multiple transactions, and issue simultaneous instructions," *id*. at 2359; "electronic recordkeeping," *id*.; and "the use of a computer to obtain data, adjust account balances, and issue automated instructions," *id*. They "do not, for example, purport to improve the functioning of the computer itself." *Alice*, 134 S. Ct. at 2359. They do not "effect an improvement in any other technology or technical field," and they merely invoke "some unspecified, generic computer." *Id*. at 2359-60. The system claims in *Alice* are "no different," the Court added, explaining that they invoke a "'data processing system' with a 'communications controller' and 'data storage unit,'" which are "purely functional and generic" components for "performing the basic calculation, storage, and transmission functions required by the method claims." *Id*. at 2360.

Given the record currently before the Court, the *Alice* decision, and without yet determining whether BitTitan's patent pertains to patent-eligible subject matter, the Court finds that SkyKick has raised a substantial question concerning invalidity, such that BitTitan cannot demonstrate a likelihood of success on the merits, and therefore BitTitan's motion fails. *Doe v. Reed,* 586 F.3d 671, 681 n. 14 (9th Cir. 2009) (explaining that the failure to show likelihood of success on the merits is dispositive).

Further, even if the Court could definitively determine that the subject matter is patent-eligible, the Court finds that BitTitan's motion fails for other reasons. SkyKick argues that the '510 patent is invalid due to obviousness, as noted above. Under 35 U.S.C. § 103, a patent is

ORDER – 11

1   invalid as obvious "if the differences between the claimed invention and the prior art are such that

2   the claimed invention as a whole would have been obvious before the effective filing date of the

3   claimed invention to a person having ordinary skill in the art to which the claimed invention

4   pertains." 35 U.S.C. § 103. Obviousness is a question of law based on underlying factual

5   findings: (1) the scope and content of the prior art; (2) the differences between the claims and the

6   prior art; (3) the level of ordinary skill in the art; and (4) objective indicia of nonobviousness.

7   *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012). A party

8   seeking to invalidate a patent on the basis of obviousness must demonstrate that a skilled artisan

9   would have been motivated to combine the teachings of the prior art references to achieve the

10  claimed invention, and that the skilled artisan would have had a reasonable expectation of success

11  in doing so. *Id.* While SkyKick presents a lengthy Declaration from its expert that goes largely

12  unrebutted, given that no claim construction has occurred, and given the preliminary nature of the

13  proceedings, the Court finds there is an insufficient factual record to make a dispositive

14  determination with respect to obviousness. However, for the same reasons, the Court also finds

15  that Defendant has presented enough evidence to raise substantial questions as to obviousness at

16  this time, and therefore Plaintiff fails to demonstrate a likelihood of success on the merits for that

17  reason.[1]

18  ///

19  ///

---

[1]   SkyKick also raises arguments about unenforceability, asserting that BitTitan obtained its patent only after withholding two crucial pieces of information from the patent examiner before the patent issued. Dkt. #23 at 13-14. However, neither party provides a sufficient factual record to make a dispositive determination with respect to this allegation, or even to determine whether a substantial question has been raised with respect to this issue.

ORDER – 12

b.  Claim Construction

Likewise, to determine whether BitTitan is likely to succeed on its claim that Defendant has infringed the '510 patent, the Court requires a more complete factual record such that it is able to engage in meaningful claim construction.  While the parties present dueling experts with respect to the interpretation of the term "prioritizing" as it appears in Claim 1, and while BitTitan asserted at oral argument that the term is not complicated and can easily be construed on the current record, the Court notes that there appears to be no agreement between the parties as to which claim terms beyond "prioritizing" are actually in dispute, or even how the patent Claims should be interpreted as a whole.  *See* Dkts. #5 at 11-14 and #19 at 8-12.  Moreover, the parties primarily discuss independent Claim 1, with little to no discussion of dependant Claims 2 and 7. As a result, the Court will not be rushed into a construction on the preliminary record before it. [2] Accordingly, given the evidence presented in conjunction with the instant motion, the Court finds SkyKick's arguments regarding construction facially plausible, and therefore finds that Plaintiff has not shown a likelihood of prevailing on the merits of its infringement claim.

2.  *Irreparable Harm*

This Court also finds that BitTitan has failed to show irreparable harm at this time. BitTitan argues that it suffers irreparable harm because it is losing market share and its

---

[2]   The Federal Circuit has recognized the difficulty imposed on a trial court to construe claim terms based upon a preliminary "likelihood" record.  *See, e.g., CVI/Beta Ventures, Inc. v. Tura, LP*, 112 F.3d 1146, 1160 n.7 (Fed. Cir. 1997) (reversing its own earlier "likelihood" claim construction of terms that were appealed after a complete record); *Bayer AG v. Biovail Corp.*, 279 F.3d 1340, 1349 (Fed. Cir. 2002) (holding that it was premature for the Circuit Court to engage in its own claim construction where the district court had not performed a comprehensive claim construction based on a complete record); *Metaullics Sys. Co. v. Cooper*, 100 F.3d 938 (Fed. Cir. 1996) (declining to construe patent claims on appeal from a denial of a preliminary injunction).

ORDER – 13

opportunity to use its patented technology to become the market leader. Dkt. #5 at 15. It further asserts loss of business opportunities, loss of goodwill and injury to reputation, and price erosion. Dkt. #5 at 18-21.

First, absent a clear showing of validity and infringement, there is no presumption of irreparable harm in a preliminary injunction proceeding. *Nutrition 21 v. U.S.*, 930 F.2d 867, 871 (Fed. Cir. 1991) (*citing Datascope Corp. v. Kontron, Inc.*, 786 F.2d 398, 400 (Fed.Cir. 1986)). Second, BitTitan fails to demonstrate that its potential losses cannot be compensated by money damages. Indeed, BitTitan's own actions belie its assertion that it requires immediate, equitable relief.[3] Finally, outside of the conclusory allegations of its Chief Executive Officer and Founder, BitTitan has produced no substantive evidence of loss of revenue, market share, goodwill, shelf space or any of the other factors which combine to prove injuries which cannot be made whole by monetary damages. Accordingly, BitTitan has not succeeded in establishing the second element of the test for issuance of a preliminary injunction.

### 3. Balance of Hardships

Likewise, BitTitan has failed to demonstrate that the balance of hardships tips in its favor. Indeed, BitTitan cites no case law in support of its position that "the balance of equities favors the

---

[3] Evidence presented by the parties which was filed under seal but briefly discussed during oral argument raises ER 408 questions which the Court will address here. As highlighted by SkyKick, Rule 408 prohibits the use of offers to compromise when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction. Fed. R. Evid. 408. SkyKick, however, does not offer the evidence in dispute to establish liability, validity or amount of a claim. *See* Dkt. #23 at 19-20 (*filed under seal*). Rather, the evidence is presented to establish whether there would be irreparable harm to BitTitan which could not be compensable by money damages, not the validity of the claim or amount of the harm. Accordingly, the Court finds the evidence admissible for that purpose and considers it accordingly. *See Apple, Inc. v. Samsung Elecs. Co.*, 2011 U.S. Dist. LEXIS 139049, *125, fn. 39 (N.D. Cal. Dec. 2, 2011).

ORDER – 14

entry of an injunction" with the exception of one out-of-District case cited for the proposition that SkyKick cannot complain if an injunction destroys its business. *See* Dkt. #5 at 22-23. Given that BitTitan has failed to demonstrate a likelihood of success on the merits or irreparable harm at this time, and the devastating affect that an injunction could have on SkyKick's business if it were forced to withdraw several of its products from the market, the Court finds that the balance of hardships tips in SkyKick's favor.

     *4. Public Interest*

     Finally, because the infringement of the patent is not yet clear, the Court cannot find that the public interest is clearly served by the grant of a preliminary injunction under these circumstances.

## IV.   CONCLUSION

     Having considered the parties' oral arguments, and having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that:

1. Plaintiff's Motion for Preliminary Injunction (Dkt. #5) is DENIED.

2. Given the substantial questions raised by Defendant under 35 U.S.C. § 101 and the U.S. Supreme Court's decision in *Alice*, *supra*, Plaintiff SHALL SHOW CAUSE **no later than 21 days from the date of this Order** why the Complaint should not be dismissed based on invalidity due to patent-ineligible subject matter. Plaintiff's brief shall be limited to no more than <u>12 pages in length</u>, and shall be noted on the Court's motion calendar for consideration on **Friday, October 2, 2015.** Defendant may file a response no later than **Monday, September 28, 2015.** Defendant's response shall be

ORDER – 15

limited to no more than <u>12 pages in length</u>.  Plaintiff may file a reply no later **Friday,**

**October 2, 2015.**  Plaintiff's reply shall be limited to no more than <u>6 pages in length</u>.

DATED this 27th day of August 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER – 16