THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BitTitan, Inc., a Washington corporation<br><br>Plaintiff,<br><br>v.<br><br>SkyKick, Inc., a Delaware corporation,<br><br>Defendant. | CIVIL ACTION NO. 2:15-cv-00754<br><br>**NOTE ON MOTION CALENDAR:<br>Friday, October 2, 2015**<br><br>**ORAL ARGUMENT REQUESTED** |

# PLAINTIFF'S MEMORANDUM OF LAW REGARDING PATENT ELIGIBILITY UNDER 35 U.S.C. § 101

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...................................................................................................................1

BACKGROUND: The Claims Overcome Known Problems .........................................2

ARGUMENT .........................................................................................................................3

    A.    Burden of Proof.............................................................................................4

    B.    The Claims of The '510 Patent Are Patent Eligible Under the Two-Step Test........................................................................................................................5

        1.    Improved Mailbox Migration Using Cloud Computing Resources That Are Dynamically Associated According to a Defined Set of Priorities Is Not An Abstract Idea...............................................................5

        2.    The '510 Patent Claims Are Inventive and Do Not Monopolize an Idea......................................................................................................10

CONCLUSION...................................................................................................................12

PLAINTIFF'S MEMORANDUM OF LAW
REGARDING PATENT ELIGIBILITY UNDER
35 U.S.C. § 101 - i

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ................................................................................................. *passim*

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
    687 F.3d 1266 (Fed. Cir. 2012) ................................................................................................6

*Bilski v. Kappos*,
    130 S. Ct. 3218 (2009) ................................................................................................3, 6

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) ................................................................................4, 6, 7

*Cadence Pharm. Inc. v. Exela PharmSci Inc.*,
    780 F.3d 1364 (Fed. Cir. 2015) ................................................................................................5

*Cal. Institute of Tech. v. Hughes Commcn's*,
    59 F. Supp. 3d 974, 991 (C.D. Cal. 2014) ................................................................6, 9, 12

*CLS Bank Int'l v. Alice Corp.*,
    717 F.3d 1269, 1302 (Fed. Cir. 2013) ................................................................................10

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) ................................................................................................6

*Cortez v. Skol*,
    776 F.3d 1046 (9th Cir. 2015) ................................................................................................5

*DataTern, Inc. v. MicroStrategy Inc.*,
    CV-11-11970-FDS, 2015 WL 5190715 (D. Mass. Sept. 4, 2015) .................................5, 8, 9

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ................................................................................. *passim*

*Enfish, LLC v. Microsoft Corp.*,
    56 F. Supp. 3d 1167, 1173 (C.D. Ca. 2014) ................................................................6, 11

*Intellectual Ventures I v. Motrola Mobility LLC*,
    81 F. Supp. 3d 356, 368-69 (D. Del. 2015) ................................................................11, 12

PLAINTIFF'S MEMORANDUM OF LAW
REGARDING PATENT ELIGIBILITY UNDER
35 U.S.C. § 101 - i

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

*LeGras v. AETNA Life Ins. Co.*,
    786 F.3d 1233 (9th Cir. 2015) ...................................................................................................5

*Microsoft Corp. v. i4i Ltd. Partnership*,
    131 S. Ct. 2238 (2011)...............................................................................................................4

*Pit River Tribe v. Bureau of Land Mgmt.*,
    793 F.3d 1147 (9th Cir. 2015) ...................................................................................................5

*Smartflash LLC v. Apple Inc.*,
    No. 6:13CV447, 2015 WL 661174 (E.D. Tex. Feb. 13, 2015)...................................................5

*Trading Technologies International v. CQG, Inc.*,
    Case No. 05-cv-4811, 2015 WL 774655 (N.D. Ill. Feb. 24, 2015) ...........................................8

*Tranxition, Inc. v. Lenovo (U.S.) Inc.*,
    2015 WL 4203469 (D. Or. July 9, 2015)...........................................................................9, 10

*Ultramercial Inc. v. Hulu LLC*,
    722 F.3d 1335 (Fed. Cir. 2013)..................................................................................................9

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)..........................................................................................4, 5, 7

**Statutes**

35 U.S.C. § 101................................................................................................................ *passim*

35 U.S.C. § 282.........................................................................................................................4

**Other Authorities**

Fed.R.Civ.P 12(c) ...................................................................................................................3, 5

PLAINTIFF'S MEMORANDUM OF LAW
REGARDING PATENT ELIGIBILITY UNDER
35 U.S.C. § 101 - ii

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

## INTRODUCTION

The purpose of the invention in U.S. Patent No. 8,938,510 ("the '510 Patent") is to improve the migration of electronic mailbox data from a source computer to a destination computer by using virtual computing instances in an unconventional way—dynamically allocating and employing cloud computing resources to migration tasks based on a set of dynamic priorities. This purpose is not abstract because it is specific, limited, cannot be implemented in the human mind, and has no analog in the brick and mortar world. The invention addresses computer problems—like inadequate processing resources to copy electronic data—with a computer solution—dynamically associate copying tasks with cloud computing resources based on dynamic priorities. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) (claims "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks" are not abstract).

The claims of the '510 Patent describe a specific, improved mailbox migration method that solves persistent problems in the developing field of electronic data migration with computer-based solutions. **First,** the method a) ensures sufficient computing capacity to process migrations and b) eliminates the need for capacity planning. The method dynamically associates cloud-based resources with mailbox migration tasks throughout the migration job. *See* '510 Patent, Claim 1, ¶1. **Second,** the method employs the computing resources unconventionally by accounting for a variety of migration "priorities" unique to each electronic mailbox and deploying resources according to seven different criteria. *See* '510 Patent, Claim 1, ¶4. **Third**, the method reduces costs and improves performance of cloud computing resources by claiming an efficient use of those resources prioritized based on unique criteria. *See* '510 Patent, Claim 3.

The claims of the '510 Patent are not directed to fundamental, foundational, or long-practiced idea with token or post-solution implementation of computer technology and will not pre-empt the use of any idea across all fields (or even the field of email migration). This Court

PLAINTIFF'S MEMORANDUM OF LAW
REGARDING PATENT ELIGIBILITY UNDER
35 U.S.C. § 101 - 1

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

should find the '510 Patent claims patent-eligible under 35 U.S.C. § 101.

## BACKGROUND: THE CLAIMS[1] OVERCOME KNOWN PROBLEMS

As shown in the below Tables—and supported by significant new expert testimony—prior to the '510 Patent, mailbox migrations experienced problems. Black ¶¶16-18. The purpose of the '510 Patent is to provide inventive solutions to these persistent problems in the field:

**Table 1**

| Problem With Previous Email Migration Methods | Inventive Solution in '510 Patent |
|---|---|
| **1) Capacity Planning**<br>"[C]umbersome capacity planning" associated with using "pre-defined" sets of computing resources. '510 Patent col.1, ll.25-29 & col.1, ll.32-33. | Use on-demand cloud computing resources and dynamically associate them (as needed) to migration tasks. '510 Patent, claim 1, ¶ 2.<br>Dynamically associating these resources is a separate element (merely using cloud resources, which would still require planning how to use them). Black ¶17. |
| **2) Wasted Processing Power**<br>"[O]ver or under utilization of [] resources" due to change in resource requirements during migration. '510 patent col.1, ll.36-37. | Dynamic association provides the exact amount of resources needed for a copying task at a given moment. '510 Patent, claim 1, ¶ 3; Black ¶18. |
| **3) Network Limits and Failures**<br>"[L]imited bandwidth, throttled connections or blocked IP addresses, resulting in slow or failed [] migrations." '510 Patent col.1, ll.51-53 | Prioritize resources based on network characteristics. '510 Patent, claim 1, ¶ 4. |
| **4) Inadequate Processing Power**<br>"[I]nsufficient processing capacity" resulting in slowed or failed migrations. '510 Patent col.1, ll.59-60. | Dynamic association provides the exact amount of resources needed at a given moment. Using cloud resources allows instant procurement of additional power. '510 Patent, claim 1, ¶ 2; Black ¶18. |

The claims of the '510 Patent also instruct how to use cloud computing resources in an unconventional way to improve performance:

**Table 2**

| Standard Cloud Computing | Improvement in '510 Patent |
|---|---|

---

[1] Before dismissing the case, the Court must look at all the claims of the '510 Patent that are different in substance. *Cf. Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2360 (2014) (treating claims together only when they "are no different" in substance.)

PLAINTIFF'S MEMORANDUM OF LAW REGARDING PATENT ELIGIBILITY UNDER 35 U.S.C. § 101 - 2

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

| | |
|---|---|
| **1) Failing Cloud Resources**  Cloud-based resources (like regular computing resources) can be slow, broken, error-prone, have a compatibility problem, etc. *See, e.g.*, '510 Patent col.4, ll.15-25; *id.* col.8, ll.26-23. | The '510 Patent addresses this in claim 1, ¶ 4 which can prioritize the dynamically associated resources based on geographic location, bandwidth, availability, security, type, or speed. It also teaches an embodiment that uses a "scheduler" "for allocating and managing computing resources" '510 Patent, 3:65-67; claim 14. The scheduler avoids problems with cloud resources by monitoring characteristics of cloud-resources such as IP address, last response time, geographical location, processing capacity, network capacity, memory load, processor load, network latency, operating system, execution time, processing errors, and processing statistics. The scheduler "may use part or all of this information to assign tasks to instances [], terminate [instances], or allocate new [instances]." '510 Patent, 4:18-25; Black ¶21. |
| **2) Expensive Cloud Resources**  Cloud computing resources (and their associated bandwidth) are "very expensive." Chatterjee Decl., ECF No. 20 at ¶132. | Cloud resources can be prioritized and dynamically associated based on bandwidth or cost. '510 Patent, Claim 1, ¶ 4. This prioritization can result in lower overall costs. Black ¶21. As described in the '510 Patent specification resources can be prioritized based on cost by assigning as many tasks as possible to a single resource. '510 Patent, 9:61-64; 10:l-51 to 11:l-9; claim 3. Black ¶21. |
| **3) Improving Basic "Scaling"**  Cloud resources may be scaled, i.e. they may "increase or decrease capacity within minutes." Chatterjee Decl. ECF No. 20 at ¶127. | Improve scaling by requiring *prioritization* of cloud resources. '510 Patent, Claim 1, ¶ 4. Prioritization in the '510 Patent is not merely scaling cloud resources up or down based on demand for processing capacity, it requires assigning and terminating resources based not just on processing capacity but on cost, geographic location, bandwidth, availability, security, type, or speed. '510 Patent, claim 1, ¶ 4; 4:23-25 (terminating or allocating new resources based on any of many criteria), 8:54-63 (terminating based on cost). |

## ARGUMENT

This case (whether under the Fed.R.Civ.P 12(c) or 56 standard) should not be dismissed because (1) the '510 Patent is an inventive and specific method in the field of mailbox migration and does not preempt the field, (2) it is directed at computer interactions, which have no brick-and-mortar analog and cannot be performed by the human mind, and (3) at a minimum there is a dispute of fact regarding the claimed inventive concepts. The claims of the '510 Patent avoid the "concern that drives" § 101 analysis because they would ***not*** "pre-empt use of this approach in all fields, and [] effectively grant a monopoly over an abstract idea." *Alice*, 134 S. Ct. at 2354; *Bilski v. Kappos*, 130 S. Ct. 3218, 3231 (2009). The two-step patent eligibility test confirms that

PLAINTIFF'S MEMORANDUM OF LAW
REGARDING PATENT ELIGIBILITY UNDER
35 U.S.C. § 101 - 3

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

the claims of the '510 Patent are directed to patentable subject matter because (1) the patent claims are not directed to an abstract idea, and (2) if they were, the claim elements, individually or combined, contain an "inventive concept." *Alice*, 134 S. Ct. at 2354-55.

The claims disclose an improved method for the migration of electronic mailboxes using dynamically associated cloud computing resources according to a defined set of priorities. That idea is not abstract under any relevant analysis. The claims do not cover a "fundamental economic [or commercial] practice long prevalent" in our society (*id.* at 2356) and cannot be performed manually by humans. *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1353 (Fed. Cir. 2014). The claims are not a "method for organizing human activity" (*Alice*, 134 S. Ct. at 2356) or "devoid of a concrete or tangible application." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) ("*Ultramercial III*"). Nor do they have a brick and mortar analog. *Id.* at 715-16. The claims are not directed to an abstract idea because they are "necessarily rooted" in computer technology, conducting a computer-only process (electronic mailbox migration) by leveraging a computer- and an Internet-only resource (cloud computing). *DDR*, 773 F.3d at 1257. They require computer interactions like booting and imaging a virtual instance (claim 25), deploying migration software on a virtual instance (claims 1, 14, 18), copying mailbox data using a virtual instance (*id.*), and prioritizing virtual instances based on interactions with mailbox account data (*id.*). These computer interaction are deeply embedded in the '510 Patent method.

If the Court resorts to a higher level of abstraction, then the meaningful limitations in the claims make the '510 Patent patent-eligible under step two. The claims improve the functioning of the mailbox migration method itself *and* the efficiency of the computer resources it uses.

### A. Burden of Proof

The '510 Patent is presumed valid and SkyKick must meet the clear and convincing standard to invalidate it. *Microsoft Corp. v. i4i Ltd. Partnership*, 131 S. Ct. 2238, 2253 (2011) (patents are entitled to a presumption of validity under 35 U.S.C. § 282, invalidity must be

PLAINTIFF'S MEMORANDUM OF LAW
REGARDING PATENT ELIGIBILITY UNDER
35 U.S.C. § 101 - 4

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

proven by clear and convincing evidence.) SkyKick questioned the applicability of the standard in the context of § 101 based on a concurring opinion in *Ultramercial III*, 772 F.3d at 720-21. Judge Mayer's statements were neither the holding of the Federal Circuit nor the Supreme Court. It is not the role of this Court "to determine whether a presumption of validity *should* apply as a matter of policy." *DataTern, Inc. v. MicroStrategy Inc.*, CV-11-11970-FDS, 2015 WL 5190715, at *7 (D. Mass. Sept. 4, 2015) (emphasis in original).[2]

Regardless of whether the Court considers this a Fed.R.Civ.P 12(c) or 56 motion, inferences must be resolved in BitTitan's favor. In a Rule 12(c) inquiry, facts are viewed in the light most favorable to the plaintiff. *LeGras v. AETNA Life Ins. Co.*, 786 F.3d 1233, 1236 (9th Cir. 2015). Issues of fact preclude a judgment on the pleadings. *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1159 (9th Cir. 2015). "Summary judgment is appropriate only if, taking the evidence and all reasonable inferences [] in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015).

### B. The Claims of The '510 Patent Are Patent Eligible Under the Two-Step Test

#### 1. Improved Mailbox Migration Using Cloud Computing Resources That Are Dynamically Associated According to a Defined Set of Priorities Is Not An Abstract Idea

The first step of the *Alice* test looks to "whether the claims at issue are directed to" a patent ineligible abstract idea. *Alice*, 134 S. Ct. at 2354-55. The accepted approach to this prong of the test is to determine the "purpose" of the claims. *Smartflash LLC v. Apple Inc.*, No. 6:13CV447, 2015 WL 661174, at *8 (E.D. Tex. Feb. 13, 2015) ("The court must first determine

---

[2] Judge Mayer's rationale—that pre-*Alice*, the USPTO was applying an improper § 101 standard—does not apply here. The '510 Patent issued after the *Alice* decision and "[t]he Patent Office is presumed to have properly done its job." *See* Black Ex. A; *Cadence Pharm. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1375 (Fed. Cir. 2015). The '510 Patent does not deserve increased scrutiny under *Alice*. It is from the networking art unit [2400] and in the four months prior to *Alice* the monthly § 101 rejection rate averaged 14.8% and in the five months after *Alice* **dropped** to an average of 10.6%. In the business methods art unit [3600] the § 101 rejection rate skyrocketed over the same periods from 11.8% before *Alice* to **32.6%** after. Davis Decl. Ex. 3, ECF No. 22-3, at 4.

PLAINTIFF'S MEMORANDUM OF LAW
REGARDING PATENT ELIGIBILITY UNDER
35 U.S.C. § 101 - 5

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

the purposes of the claimed inventions.").[3]  Identifying the "purpose" is not an effort to re-define a claim in the simplest possible terms—otherwise everything would sound like an abstract idea. Rather, the purpose is to look at the claims and see what they are trying to accomplish—even if that is difficult or complicated to understand.[4]

### a. The Purpose of the Claims of the '510 Patent is Not Abstract Under Any Relevant Test

The purpose of the claims of the '510 Patent is: to improve the migration of electronic mailbox data from a source computer to a destination computer by using cloud computing resources in an unconventional way—dynamically allocating cloud resource to migration tasks based on a set of dynamic priorities. The improved method solves persistent problems in the developing field of mailbox migration as discussed *supra* in Tables 1 and 2. It is not abstract.

The claims of the '510 Patent are not directed to a "preexisting, fundamental truth" or "fundamental economic practice long prevalent in our system of commerce." *Alice*, 134 S. Ct. at 2356-57. In the cases that revitalized § 101 analyses, "old" ideas have existed for millennia. *See Alice*, 134 S. Ct. at 2355-57 (intermediated settlement); *Bilski*, 130 S. Ct. at 3231 (hedging); *see also buySAFE*, 765 F.3d at 1355 ("a contractual relationship [] that is beyond questions of ancient lineage."). SkyKick insists that the claims of the '510 Patent are abstract because mailbox migration is "old" and cloud computing is "old." The '510 Patent does not just "use cloud computing." Cloud computing is incredibly broad, referring to an entire technological environment. The '510 Patent focuses on a unique and narrow subpart—the dynamic association

---

[3] *See also Enfish, LLC v. Microsoft Corp.*, 56 F. Supp. 3d 1167, 1173 (C.D. Ca. 2014) ("the court must identify the purpose of the claim—in other words, determine what the claimed invention is trying to achieve—and ask whether the purpose is abstract."); *Cal. Institute of Tech. v. Hughes Commcn's*, 59 F. Supp. 3d 974, 991 (C.D. Cal. 2014) ("*CIT*") (same).

[4] That is why "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012). Since the Court is considering eligibility at this stage, the claims must be construed in the matter most favorable to BitTitan. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).

PLAINTIFF'S MEMORANDUM OF LAW
REGARDING PATENT ELIGIBILITY UNDER
35 U.S.C. § 101 - 6

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

and prioritization of cloud computing processing resources. *See* Black ¶¶20-27. But even under the broad characterization, there is no evidence that using mailbox migration together with "cloud computing" is an "old" idea. Email and cloud computing—let alone the combination of the two—have not been around for millennia[5] and there is no brick and mortar equivalent.[6]

The method in the claims of the '510 Patent cannot be performed manually by humans. *buySAFE*, 765 F.3d at 1353 (Fed. Cir. 2014). A human cannot possibly perform a mailbox migration using the claimed method because they cannot dynamically associate cloud computing resources to migration tasks (copying, configuring, synchronizing, prioritizing, etc.) as claimed. Black ¶14. SkyKick's own examples demonstrate why the claims are not abstract—all mailbox migrations are rooted in computer technology. They can only be performed by a person using a computer and the Internet. *See* ECF No. 19 at 16-17 ("humans *employed computers*," "humans *associated the computer/servers*," "humans *prioritized computing resources*").[7]

### b. Like *DDR*, the Purpose of the '510 Patent Claims is Not Abstract Because it is "Necessarily Rooted in Computer Technology"

As shown in Tables 1 and 2, *supra*, the purpose of the claims of the '510 Patent is to overcome problems that are unique to electronic mailbox migration and cloud computing. Claims "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks" are not abstract ideas. *DDR*, 773 F.3d at 1257.

The migration of electronic mailboxes is fundamentally different than any non-computer-

---

[5] SkyKick admits cloud computing has only been commercially available since **2006**. Chatterjee Decl., ECF No 20 at ¶124.
[6] The validity of a combination of two recently developed technologies, (electronic mailbox migration and cloud computing) is a question of § 103 obviousness, not § 101 patentability. By SkyKick's logic, George Selden's patent on a gasoline powered automobile, U.S. Patent No. 549,160 (filed May 1879), was directed to an abstract idea because carriages were old and gasoline engines were "old" (*e.g.* U.S. Patent No. 125,166 (issued April 2, 1872)).
[7] The claims of the '510 Patent pass two other tests for abstract ideas: 1) they do not describe "a method for organizing human activity" for the same reason it does not describe a method that can be performed by humans—the claims of the '510 Patent are limited to a computer-specific implementation and 2) they are not "devoid of concrete or tangible application"—they specifically disclose the types of computer resources employed and system logic to employ them. *Alice*, 134 S. Ct. at 2356; *Ultramercial III*, 772 F.3d at 715.

PLAINTIFF'S MEMORANDUM OF LAW
REGARDING PATENT ELIGIBILITY UNDER
35 U.S.C. § 101 - 7

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

based migration of data because of unique challenges associated with the copying electronic mailboxes: Changes must be synchronized across the source and destination. Costs for computing resources vary. Tasks require different amounts of computing resources. Each of these attributes varies continuously and instantaneously. Detailed, varied, and volatile mailbox content—such as stored messages, appointments, contacts, folder structure, etc.—are not copied and synchronized as a group in non-computer environments. Black ¶¶ 10-13.

Like *DDR*, the '510 Patent uses computer technology to solve problems that arise in the realm of computers *and* does so in an unconventional way. *See* Table 1 and 2. By requiring that the cloud computing resources are prioritized—rather than merely procuring cloud computing resources as processing needs change—the claims of the '510 Patent "specify how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional" application of cloud resources. *DDR*, 773 F.3d at 1258. In *DataTern*, the court held that patents directed to "interfacing an object oriented software application to access data stored in a relational database" were valid because the patent-in-suit "is directed at solving a problem that specifically arises in the realm of computing; indeed, object-oriented programs exist only in the realm of computers, and relational databases are utilized primarily, if not exclusively, on computers." 2015 WL 5190715, at *8 (*citing DDR*, 773 F.3d at 1257).[8] Object oriented software is not new. Relational databases are not new, but the Court did not warp the patentability inquiry into an obviousness inquiry. Similarly, the '510 Patent is not abstract because it solves problems that arise with a process that only exists in the realm of computers (migrating electronic mailboxes) leveraging a solution (on-demand cloud computing) only available in the realm of computers. Black ¶15.

---

[8] *See also Trading Technologies International v. CQG, Inc.*, Case No. 05-cv-4811, 2015 WL 774655, at *4 (N.D. Ill. Feb. 24, 2015) (electronic stock trading patents not directed to an abstract idea because *electronic* trading is fundamentally different and patent solves problems that "did not arise" in pre-electronic trading).

PLAINTIFF'S MEMORANDUM OF LAW
REGARDING PATENT ELIGIBILITY UNDER
35 U.S.C. § 101 - 8

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

### c. SkyKick's Proposed "Abstract Idea" is Inconsistent, Inaccurate, and Overbroad

SkyKick cannot consistently describe the alleged abstract idea in the '510 claims.[9] At the PI hearing, SkyKick finally settled on "prioritizing resources to move data." Aug. 26, 2015 PI Hearing Transcript, 30:12-13. That is not a reasonable or accurate description of purpose. "Courts should recite a claim's purpose at a reasonably high level of generality." *CIT*, 59 F. Supp. 3d. at 992. Reasonable generality is required because "[t]he Court has long-recognized that any claim can be stripped down, simplified, generalized, or paraphrased to remove all of its concrete limitations, until at its core, something that could be characterized as an abstract idea is revealed." *Ultramercial Inc. v. Hulu LLC*, 722 F.3d 1335, 1344 (Fed. Cir. 2013).

There is no risk of the '510 Patent pre-empting SkyKick's overbroad abstract idea. "Data" in the '510 Patent is limited to electronic mailbox data and "prioritizing resources" to a specific use of cloud computing resources. SkyKick's proposal is also incorrect. The migration method in the '510 Patent claims is not about ***moving*** data, it is about ***copying*** data. *See* claim 1, ¶¶ 2, 3, and 4 ("processing copying," "employed in the copying," and "process the copying."). The error is crucial. SkyKick supports its proposed abstract idea with an analogy to the post office. The post office moves pieces of mail; it does not copy mailboxes. The "data" in a real world mailbox shares none of the complexity of its electronic namesake. Black ¶11. Even if the data were comparable, there is no real world equivalent to ***copying*** that using dynamically allocated cloud computing resources. Black ¶9.

SkyKick claims *Tranxition, Inc. v. Lenovo (U.S.) Inc.* is "strikingly similar" to this case.

---

[9] SkyKick has alleged the abstract idea is "the concept of using computers from a well-known resource (the cloud), instead of using your own, to perform the well-known process of mailbox migration;" "the abstract concept of prioritizing cloud resources to move data;" "prioritizing resources to move data." ECF No. 19, Opp. at 1, 2, and 19. SkyKick's inability to consistently define the abstract idea weighs against the finding of an abstract idea. *See DDR*. 773 F.3d at 1257 (defendants' "varying formulations of the underlying abstract idea" illustrated difficulty in identifying nature of idea); *see also DataTern*, 2015 WL 5190715, at *9 (valid under § 101 where identifying "precise nature" of abstract idea was not was "straightforward" as *Alice* or other recent cases)**.**

PLAINTIFF'S MEMORANDUM OF LAW
REGARDING PATENT ELIGIBILITY UNDER
35 U.S.C. § 101 - 9

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

ECF No. 19 at 2 *citing* 2015 WL 4203469 (D. Or. July 9, 2015). Any similarity is superficial. Unlike the '510 Patent, the invalidated claims were "entirely devoid of any detail about how the invention works" and "threaten to foreclose any attempt to migrate settings between computers." *Id.* at *19, *29. To illustrate the specificity of the '510 Patent claims, Dr. John Black has removed the "details" about how the patented method works from claim 1 of the '510 Patent. Black Ex. C. As written and granted, the '510 Patent claims include system logic that would not cause broad preemption because they disclose a "specific way" of doing something with a computer and a specific type of computer for doing it. Black ¶35. *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1302 (Fed. Cir. 2013) ("The key to this inquiry is whether the claims tie the otherwise abstract idea to a *specific way* of doing something with a computer, or a *specific computer* for doing something; if so, they likely will be patent eligible, unlike claims directed to *nothing more than the idea* of doing that thing on a computer.") (emphasis in original), *aff'd by Alice*, 134 S. Ct. at 2360.

### 2. The '510 Patent Claims Are Inventive and Do Not Monopolize an Idea

The second step of the *Alice* test requires examination of "the elements of [a] claim to determine whether it contains an "inventive concept.'"" *Alice*, 134 S. Ct. at 2357. "[T]ransformation into a patent-eligible application requires more than simply stating the abstract idea while adding the words apply it." *Id.* (internal alterations omitted).

**Inventive Concepts:** The claims of the '510 Patent not only teach the use of cloud-computing resources to process the copying of mailbox data but *also* to *dynamically associate* those resources to migration tasks. This is inventive. Black ¶¶23-26. SkyKick identified one patent application (Davis Decl. Ex. 20, ECF No. 22-5 ("Ferris")) that taught how to make "on-demand" cloud environments that are intended to last for a specified time like *hours or days*, Ferris ¶0002; and are not intended to change based on criteria. In other words, these environments were not dynamic. Black ¶25. The claims of the '510 Patent teach that dynamic

PLAINTIFF'S MEMORANDUM OF LAW
REGARDING PATENT ELIGIBILITY UNDER
35 U.S.C. § 101 - 10

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

association must include prioritization based on at least one of several criteria. This is inventive. Black ¶26. Ferris did not teach that priorities could be monitored in order to continually change cloud environments to suit the immediate demands of a task. *Id.* The claims teach a unique system that is designed to procure cloud computing resources that meet the priorities of each mailbox migration. This is inventive. Black ¶27. In fact, expense was the precise problem encountered by Yippiemove when trying to use cloud computing resources to perform mailbox migrations. Chatterjee Decl., ECF No. 20 at ¶ 132. The '510 Patent offers an inventive solution of prioritizing based on cost.[10] These limitations "improve the functioning of [a] computer itself" and "effect an improvement in any other technology or technical field." Order, ECF No. 50, at 11 (*citing Alice,* 134 S. Ct. at 2359). As discussed in detail in Tables 1 and 2, *supra*, the claim elements, individually and together, improve the functioning of mailbox migration ***and*** the efficiency of cloud computing resources. At the very least, the question of whether these concepts are meaningful or inventive raises issues of fact that preclude dismissal.

**Narrow Monopoly:** The claims of the '510 Patent do not merely take mailbox migration (let alone the broad idea put forth by SkyKick) and say "apply it" to the cloud—the monopoly granted by the patent is much narrower. In light of the limitations discussed directly *supra*, a party could avoid infringing by a) not using cloud resources, b) using cloud resources but not dynamically associating them, c) using dynamically associated cloud resources but for tasks *other than* copying, or d) using dynamically associated cloud resources for copying but prioritizing the resources based on criteria *other than* those listed in Claim 1.

Courts have remarked that limitations similar to dynamic association bestow patentability. *See Enfish*, 56 F. Supp. 3d at 1181-82 ("dynamic memory allocation" would be patentable); *Intellectual Ventures I v. Motrola Mobility LLC*, 81 F. Supp. 3d 356, 368-69 (D. Del.

---

[10] Other claims include additional meaningful and inventive limitations: configuration (claim 2), synchronization (claim 7), a scheduler (claim 14), a migration or synchronization system (claim 18); claim 25 (booting from an image). Black ¶28.

PLAINTIFF'S MEMORANDUM OF LAW
REGARDING PATENT ELIGIBILITY UNDER
35 U.S.C. § 101 - 11

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

2015) ("allocating" wireless bandwidth was patentable).  In July 2015, the USPTO issued guidance on patent eligibility (Black Decl. Ex. B) and analyzed a claimed method that moved BIOS code from a computer's local motherboard to a local area network (similar to the use of cloud computing in the '510 Patent). *Id.* at 21.  With much less specific limitations (the claim included nothing analogous to dynamic association based on priorities), the UPSTO found that "even if the claim did recite [an abstract idea], the claim is not attempting to tie up any such [idea] so that others cannot practice it.  In particular, the claim's description [of its elements] makes it clear that the claim as a whole would clearly amount to significantly more than any potential recited [abstract idea]." *Id.* at 22.  The '510 Patent claim limitations are similar to, and in fact even narrower, than these examples.  Black ¶¶32-35,40-41.

**Unconventional:**  The claims include more than "conventional" elements.  "[N]either *Mayo* nor any other precedent defines conventional elements to include everything found in prior art." *CIT*, 59 F. Supp. 3d at 899 (emphasis in original).  Instead, conventional elements are those that are "ubiquitous in the field." *Id.* at 992.  Prioritizing cloud computing resources as described in the '510 Patent was not "conventional" or "ubiquitous in the field" in 2010.  Black ¶24. Prioritizing cloud computing resources "specif[ies] how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional" application of cloud resources.  *DDR*, 773 F.3d at 1258.  In light of Dr. Black's declaration, SkyKick cannot show by clear and convincing evidence that the '510 Patent's use of cloud computing was "conventional" or "ubiquitous" in 2010.

## CONCLUSION

In light of the presumption of validity, inferences that must be made in favor of BitTitan, and disputes over the state of the art and claim construction, this case should not be dismissed.

PLAINTIFF'S MEMORANDUM OF LAW
REGARDING PATENT ELIGIBILITY UNDER
35 U.S.C. § 101 - 12

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

DATED this 17th day of September, 2015.

DORSEY & WHITNEY LLP


*/s/ Case L. Collard*
CASE L. COLLARD (PRO HAC VICE)
COLLARD.CASE@DORSEY.COM
**Dorsey & Whitney LLP**
1400 Wewatta Street, Suite 400
Denver, CO 80202-5549
(303) 629-3400

PAUL T. MEIKLEJOHN WSBA #17477
MEIKLEJOHN.PAUL@DORSEY.COM
**Dorsey & Whitney LLP**
Columbia Center
701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7043
(206) 903-8800


*Attorneys for Plaintiff BitTitan, Inc.*

PLAINTIFF'S MEMORANDUM OF LAW
REGARDING PATENT ELIGIBILITY UNDER
35 U.S.C. § 101 - 13

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820